# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0966
════════════

SAN ANTONIO WATER SYSTEM, PETITIONER,

v.

DEBRA NICHOLAS, RESPONDENT

══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
══════════════════════════════════════════════════════

**Argued January 13, 2015**

JUSTICE BROWN delivered the opinion of the Court.

The Texas Commission on Human Rights Act (TCHRA) protects from retaliation employees who oppose discriminatory employment practices. In this case Debra Nicholas, a former San Antonio Water System (SAWS) employee, contends she was terminated because she confronted a male vice president about his repeated lunch invitations to two female employees outside his department. We hold no reasonable person could have believed the invitations gave rise to an actionable sexual-harassment claim. Accordingly, Nicholas did not engage in a protected activity under the TCHRA when she confronted the vice president about his behavior. We reverse the court of appeals' judgment and dismiss Nicholas's claim.

# I

A Bexar County jury heard Nicholas's action against SAWS. The jury found for Nicholas and the trial court entered judgment on the jury's verdict. The following facts were developed at trial.

In 2006, Nicholas was employed as chief of staff to David Chardavoyne, SAWS's CEO. Early that year, Chardavoyne called Nicholas into an in-progress meeting with Frank Stenger-Castro, SAWS's general counsel. Stenger-Castro told them that Lisa Spielhagen, a paralegal, informed him she had been repeatedly invited to lunch by Greg Flores, a recently hired vice president, and was uncomfortable with the invitations. According to Chardavoyne's and Nicholas's testimony, Stenger-Castro told them Spielhagen said she felt harassed and that she would file a formal complaint if the invitations persisted. Nicholas added that Stenger-Castro mentioned that Flores had also invited to lunch a second employee, training consultant Sharon Snoga, though Stenger-Castro said he had not personally spoken with Snoga.

Stenger-Castro, however, testified that Speilhagen did not complain about sexual harassment or suggest she would file a complaint; rather, she simply found the invitations awkward and inappropriate, and wanted them stopped. He testified he went to Chardavoyne out of an abundance of caution because Flores's behavior was "risky," though he did not believe it violated SAWS's sexual-harassment policy.

Chardavoyne and Nicholas testified they met with Flores shortly after their meeting with Stenger-Castro. Nicholas testified Flores admitted to inviting the women to lunch and once complimented Snoga on her appearance but denied he intended to sexually harass either woman and said he would change his behavior. Chardavoyne testified Nicholas did not say much at the meeting

beyond reenforcing his admonishments to stop asking the women to lunch. Nicholas testified Chardavoyne said he would not allow a member of the executive team to sexually harass anyone, and that she told Flores it was "not a good idea for him to be going out with women in the organization . . . by himself," which "can be construed as inappropriate." Nicholas testified she further told Flores he risked losing his job if his conduct persisted. When asked if Nicholas intended to counsel or reprimand Flores to prevent potential sexual harassment, Nicholas responded, "Absolutely . . . because Frank Stenger-Castro . . . told us that if it didn't stop, Lisa Spielhagen would file a complaint." Flores, on the other hand, denied a conversation with Chardavoyne and Nicholas about his lunch invitations ever took place. He did, however, testify to sending Snoga two emails in February 2006 in which he asked if she wore colored contacts and if she was making "an indecent proposal."

Chardavoyne resigned in 2008. His replacement chose to hire his own chief of staff, and Nicholas was reassigned to an assistant vice president position that reported directly to Flores. In 2009, that position was eliminated as part of what SAWS contends were organization-wide cost-cutting measures, and Nicholas was not interviewed for any other position. Nicholas maintains her termination was retaliation for her confronting Flores, and that the retaliation was delayed because Flores had no authority over her until her reassignment in 2009. Nicholas also complains she was not interviewed for subsequent positions despite being qualified. She sued SAWS under the TCHRA, alleging SAWS retaliated against her for opposing a discriminatory employment practice.

The jury found Nicholas opposed sexual harassment by counseling or reprimanding Flores, was fired because of it, and awarded her nearly $1 million in damages. SAWS appealed, arguing no

3

reasonable person could have believed sexual harassment under the TCHRA had occurred, and therefore Nicholas did not engage in a "protected activity" under the TCHRA when she confronted Flores. SAWS further argued Nicholas could not show a causal link between her confronting Flores and her eventual termination nearly three years later, and that the trial court failed to apply a statutory damages cap to Nicholas's front-pay damages award. The court of appeals affirmed the trial court's judgment on all three issues, and SAWS sought our review. Because we hold Nicholas did not engage in a protected activity under the TCHRA and consequently dismiss her claim, we do not reach SAWS's second and third issues.

**II**

SAWS is a governmental entity owned by the City of San Antonio that provides water and wastewater services in Bexar and neighboring counties. As a governmental entity, it is generally immune from suit. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). However, the Legislature has waived immunity for claims properly brought under the TCHRA. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008). But that waiver extends only "to those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012) (citing *State v. Lueck*, 290 S.W.3d 876, 881–82 (Tex. 2009)) (other citations omitted). Accordingly, a plaintiff must state a claim for conduct that would violate the TCHRA. *See id.* at 636–37. Otherwise, "any superficial reference to the [TCHRA] in a pleading would be sufficient to establish the State's consent to be sued—and additionally, the trial court's

4

jurisdiction over the claim—a result the Legislature did not intend." *Id.* at 637 (citing *Lueck*, 290 S.W.3d at 882).

To establish a trial court's jurisdiction over her TCHRA claim, a plaintiff must "plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation." *Id.* Nicholas argues the trial court's jurisdiction vested when she met what she describes as the "very minimal" burden of establishing her prima facie case. But once a case has been fully tried on the merits, the prima facie case is no longer relevant. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court. But when a discrimination case has been fully tried on its merits, . . . a reviewing court does not engage in a burden-shifting analysis." (internal citations omitted)). Instead, we simply "inquire whether the evidence is legally sufficient to support the jury's ultimate finding." *Id.*

Like a failure of proof at the prima facie stage, a failure to prove the elements of a TCHRA claim after a trial on the merits deprives the trial court of jurisdiction. *See Univ. of Hous. v. Barth*, 403 S.W.3d 851, 853 (Tex. 2013) (per curiam) (holding that plaintiff's failure to satisfy objective component of good-faith test for reporting a violation deprived trial court of jurisdiction); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010) (recognizing "when elements of a statutory claim involve 'the jurisdictional inquiry of sovereign immunity from suit,' those elements can be relevant to both jurisdiction and liability" (quoting *Lueck*, 290 S.W.3d at 883)). SAWS argues there is no evidence Nicholas had a good-faith, reasonable belief that she engaged in a protected

5

activity under the TCHRA. If SAWS is correct, the trial court had no jurisdiction over Nicholas's claim.

Nicholas argues SAWS failed to preserve this argument because it was not presented as a legal-sufficiency challenge below. SAWS concedes it presented its argument below as a factual-sufficiency challenge, but contends the point is nonetheless appropriately before this Court because it implicates SAWS's immunity from suit. We agree. The elements of a retaliation claim under the TCHRA are jurisdictional in nature because "the Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Garcia*, 372 S.W.3d at 636. We have consistently held that jurisdictional arguments concerning immunity waiver cannot be waived. *See Lueck*, 290 S.W.3d at 881 (holding elements of a Whistleblower Act claim are jurisdictional and may not be waived); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) (holding jurisdiction "may be raised for the first time on appeal" and may not be waived by the parties). It follows that "an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all." *Dall. Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (Even "if immunity is first asserted on interlocutory appeal, [the interlocutory-appeal statute] does not preclude the appellate court from having to consider the issue at the outset in order to determine whether it has jurisdiction to address the merits."); *Univ. of Hous. v. Barth*, 313 S.W.3d 817, 818 (Tex. 2010) (per curiam) (holding court of appeals erred in concluding governmental entity

waived jurisdictional challenge). We are accordingly obliged to consider SAWS's jurisdictional argument.

**III**

Because the TCHRA was enacted in part to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," we look to relevant federal law for guidance when the relevant provisions of Title VII are analogous. *See* TEX. LAB. CODE § 21.001(1); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). The TCHRA prohibits employers from engaging in retaliatory action against an employee for opposing a discriminatory practice. TEX. LAB. CODE §§ 21.051, 055(1). To establish a violation, the employee must show that: (1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action. *See Evans v. City of Hous.*, 246 F.3d 344, 352 (5th Cir. 2001); *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 472 (Tex. App.—Houston [14th Dist.] 2012, no pet.). An employee engages in a protected activity when she "opposes a discriminatory practice," "makes or files a charge," "files a complaint," or "testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE § 21.055. Here, Nicholas contends she opposed a discriminatory practice in the form of sexual harassment. Sexual harassment is a recognized cause of action under Title VII and the TCHRA. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010).

Opposition to a discriminatory practice is a protected activity irrespective of the merits of the underlying discrimination claim. *City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008). However,

7

to establish an employee opposed a discriminatory practice, the employee must demonstrate a good-faith, reasonable belief that the underlying discriminatory practice violated the TCHRA. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) ("To satisfy this opposition requirement, [the claimant] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000))); *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 224 (Tex. App.—San Antonio 1998, pet. denied) ("The employee is not required to show that there was actual existence of an unlawful practice, only that she held a good[-]faith reasonable belief that the employer engaged in activity made unlawful by Title VII or the TCHRA."). The court of appeals acknowledged this requirement but concluded that "Nicholas established she held a good[-]faith belief that Flores may have engaged in sexual harassment and that her belief was objectively reasonable in light of the record presented." *San Antonio Water Sys. v. Nicholas*, 441 S.W.3d 382, 391 (Tex. App.—San Antonio 2013). We disagree.

We first clarify the scope of the conduct that may be considered. On appeal, Nicholas points to allegedly inappropriate emails Flores sent to Snoga concerning whether she wore colored contact lenses and asking whether she was making "an indecent proposal." But Nicholas testified she did not see these emails until the day before her deposition, and that her counseling of Flores "wasn't based upon these emails." Therefore, we do not consider them. When a plaintiff argues she opposed a discriminatory practice, "the relevant conduct does not include conduct that actually occurred . . . but was unknown to the person claiming [retaliation]." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d

8

1346, 1352 (11th Cir. 1999). "Instead, what counts is only the conduct that person opposed, which cannot be more than what she was aware of." *Id.* Nicholas argues only that she confronted Flores about his lunch invitations.

Nicholas testified she acted on information that Flores had "invited [Spielhagen] out to lunch before or repeatedly, several times anyway" and that Snoga "had a similar complaint." Regardless of what Nicholas subjectively believed about Flores's conduct, no reasonable person would believe that a handful of lunch invitations amounted to sexual harassment actionable under the TCHRA. We have previously recognized that "[t]o make out a statutory sexual-harassment claim, the employee must prove more than that she found the harassment offensive." *Waffle House*, 313 S.W.3d at 805. Rather, "[t]he TCHRA contemplates discrimination affecting the 'terms, conditions, or privileges of employment.'" *Id.* (citing TEX. LAB. CODE § 21.051(1)). Accordingly, sexual harassment is actionable "only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (alteration in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)) (internal quotation marks omitted). We determine whether such an environment exists by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787–88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Offhand comments and isolated incidents, unless extremely serious, typically will not amount to discriminatory changes in the

9

"terms, conditions, or privileges of employment." *See id.* at 788. Flores's lunch invitations may have been unwelcome, but no reasonable person could believe they constituted sexual harassment actionable under the law. We do not mean to say that lunch invitations can never be a component of a viable sexual-harassment claim, but under the facts of this case the lunch invitations were not so severe or pervasive as to alter the conditions of employment or create an abusive work environment.

In holding otherwise, the court of appeals focused only on the *subjective* belief of the actors involved, pointing to Chardavoyne's testimony that Stenger-Castro told him Spielhagen said she was being harassed and that she would file a formal complaint if the invitations did not stop. And although Stenger-Castro testified Spielhagen did not feel she was harassed nor threatened to formally complain, he nonetheless admitted Flores's behavior was "risky." Therefore, he went to Chardavoyne out of an abundance of caution, though he did not believe SAWS's sexual-harassment policy had been violated. But none of these precautionary measures establishes a good-faith, reasonable belief that sexual harassment under the TCHRA had occurred. Even Nicholas testified that the decision to confront Flores was made to "prevent sexual harassment potentially." At most, steps were taken to prevent unactionable conduct from becoming actionable. But the standard in retaliation cases is that "an objectively reasonable belief that a violation is actually occurring based on circumstances that the employee observes and reasonably believes." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 341 (4th Cir. 2006) (explaining that retaliation claim must involve statutory violation that "has happened or is in progress").

Moreover, the conduct in this case pales in comparison to offensive but isolated conduct other courts have held could not be the basis of a good-faith reasonable belief the law had been violated. *See Breeden*, 532 U.S. at 271 (holding single incident of male employee reading aloud sexual innuendo contained in a psychological evaluation, at which he and another male employee chuckled, could not reasonably been seen as violating the law); *Amos v. Tyson Foods, Inc.*, 153 F. App'x 637, 640, 646 (11th Cir. 2005) (holding single instance of male employee entering women's restroom and "gawking" at undressed women could not create objectively reasonable belief that claimants suffered illegal sexual harassment); *Fogleman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 584 (3d Cir. 2004) (holding female employee could not reasonably believe she had been sexually harassed when male supervisor commented on her underwear being visible under her uniform). Indeed, the court of appeals in this case has itself previously held unactionable conduct arguably more egregious than the lunch invitations at issue here. In *Cox & Smith Inc. v. Cook*, a male supervisor told the plaintiff a former supervisor "always talks about your breasts" and that "[w]e thought you and he were hiding the salami." 974 S.W.2d at 221. The supervisor also told the plaintiff an offensive joke and made comparisons between the plaintiff and Hillary Clinton that the plaintiff believed were sexual in nature. *Id.* at 226. Nonetheless, the court of appeals held the plaintiff could not have reasonably believed that these incidents constituted actionable sexual harassment under the TCHRA. *Id.* at 227. Without approving or disapproving *Cook*, we find the conduct at issue here insufficient to give rise to any reasonable good-faith allegation of sexual harassment.

Nicholas separately argues that because SAWS did not request definitions of key terms, such as "sexual harassment," in an instruction accompanying the liability question that was submitted to the jury, the jury was entitled to ascertain its ordinary usage. Accordingly, Nicholas argues it is too late for SAWS to argue this claim should be measured against the standard of sexual harassment under TCHRA and Title VII case law and that this Court is bound to review the evidence in light of the ordinary meaning of "sexual harassment."

The trial court instructed the jury that "[t]o oppose sexual harassment, [Nicholas's] action in counseling and reprimanding [Flores] for sexual harassment must have been based on a reasonable, good faith belief that his conduct actually violated the Texas Labor Code, even if she was ultimately mistaken." SAWS responds that the charge is consistent with the TCHRA and case law and that courts reviewing legal sufficiency are not bound by how terms were defined in the jury charge. We do not pass judgment on the correctness of the instruction because we agree with SAWS that it ultimately has no bearing on whether the trial court had jurisdiction over Nicholas's claims. Sovereign immunity can be waived only by statute. *City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) ("[I]mmunity can be waived, but we defer to the Legislature to do so by statute."). Charge error cannot confer jurisdiction where none exists.

* * *

Because Nicholas could not have reasonably believed Flores's lunch invitations constituted an unlawful employment practice, her response in counseling or reprimanding Flores was not a protected activity under the TCHRA. Nicholas therefore not only failed to prove her retaliation

claim, she never pleaded one under the TCHRA. SAWS's immunity from suit was therefore not waived, and the trial court lacked jurisdiction over Nicholas's claim. We reverse the contrary judgment of the court of appeals and render judgment dismissing Nicholas's claim.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: April 24, 2015