# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 15-0932

═══════════════

AMERICAN K-9 DETECTION SERVICES, LLC AND
HILL COUNTRY DOG CENTER, LLC,
PETITIONERS,

v.

LATASHA FREEMAN, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════

JUSTICE GUZMAN, dissenting.

Over the past two decades, the military's use of private contractors to support its overseas missions has skyrocketed.[1] "At times, the number of contract employees has exceeded the number of military personnel alongside whom they work in these warzones."[2]  In a decision carrying serious ramifications for those injured by private contractors in combat zones, the Court holds that contractors can escape liability for their actions merely by pointing the finger at the military.  The Court's analysis turns on a dangerous misapplication of the political question doctrine and runs counter to our plea-to-the-jurisdiction jurisprudence.  I therefore join JUSTICE DEVINE's dissenting opinion and write separately to expound on these substantive and procedural shortcomings.

---

[1] *In re KBR, Inc. (Burn Pit Litig.)*, 744 F.3d 326, 331 (4th Cir. 2014).

[2] *Id.*

# I

"[T]he Judiciary has a responsibility to decide cases properly before it, even those it would gladly avoid."[3] The political question doctrine is a "narrow exception" to that charge,[4] applying *only* when a political question "is inextricable from the case at bar."[5] But with virtually no United States Supreme Court guidance on the topic, courts have been inconsistent in determining how entwined a political question must be for it to be "inextricable" from a case. Multiple approaches have been employed, and this case presents a prime example of the lingering uncertainty.

The Court views the Army as a responsible third party on AMK9's mere say so and dismisses the case without any evidence of that fact, concluding that simply designating the Army as a potentially responsible party means the merits of the case could never be determined without evaluating the military's battlefield decisions. I believe courts must first determine whether a fact issue exists that could obviate any need to assess the military's decisions—here, whether the Army actually caused an injury. Other Courts have taken different analytical paths, such as declining to focus the inextricability determination on the defensive theories that have been asserted—as the Court does here—because that "'give[s] defendants too much power to define the issues.'"[6] Though the existing political-question jurisprudence is fairly well-developed, it is decidedly uneven regarding inextricability, and the Supreme Court has not weighed in to settle the matter.

One thing is clear, however; federal courts confronting the issue have applied a much more searching standard than the Court adopts today, defining inextricable to mean the political question

---

[3] *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012) (internal quotation marks omitted).

[4] *Id.* at 195.

[5] *Baker v. Carr*, 369 U.S. 186, 217 (1962).

[6] *Ghane v. Mid-S. Inst. of Self Defense Shooting, Inc.*, 137 So. 3d 212, 221 (Miss. 2014) (quoting *McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 695 (D.N.J. 2013)).

2

is certain,[7] required,[8] and impossible to avoid.[9] Declining to dismiss a suit unless a political question meets the inextricability standard preserves access to the courts and fulfills the judiciary's obligation to resolve disputes. But, here, the Court gives short shrift to this crucial precept, summarily concluding a merits-based disposition is beyond judicial ken.[10] Rather than ensuring the inextricable presence of a political question, the Court holds dismissal is required if a contractor asserts—without evidence—that the military might be a causal contributor. The Court abjures its responsibility to decide justiciable cases by embracing a legal standard that terminates litigation before any determination has been made that a political question is actually in play.

Though a court must be careful not to exercise jurisdiction it lacks, it must be equally careful not to decline to exercise jurisdiction it has.[11] The Court strikes the wrong balance here. The bright-line rule the Court adopts (1) favors tortfeasors over injured parties, (2) ignores the

---

[7] *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) ("[A] court must satisfy itself that [a] political question will certainly and inextricably present itself.").

[8] *See Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1215 (9th Cir. 2017) (framing the issue as whether the claims or causation defense "would actually require the court to review the wisdom of the Navy's decisions"); *In re KBR, Inc. (Burn Pit Litig.)*, 744 F.3d 326, 340 (4th Cir. 2014) (discussing whether causation defense "require[s] evaluation of the military's decision making"); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1358 (11th Cir. 2007) ("A case may be dismissed on political question grounds if—and only if—the case will require the court to decide a question possessing one of these six [*Baker*] characteristics.").

[9] *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1282-83 (11th Cir. 2009) (analyzing whether "it would be impossible to make any determination" regarding negligence without scrutinizing military decisions).

[10] *Ante* at 21 ("[W]e hold that this case is nonjusticiable due to the presence of an inextricable political question.").

[11] As Chief Justice Marshall explained in *Cohens v. Virginia*:

It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

19 U.S. (6 Wheat.) 264, 404 (1821).

Supreme Court's holding that only inextricable political questions render a matter nonjusticiable, and (3) is repugnant to our plea-to-the-jurisdiction precedent. Applying the appropriate legal standard and following proper procedures may ultimately lead to dismissal of LaTasha Freeman's lawsuit. But if the military had no part in causing Freeman's injury, the political question doctrine does not bar a merits-based disposition.

## II

Whether a political question necessarily arises here remains to be seen. Discovery is still in the early stages, and the trial court dismissed the case without even ruling on Freeman's request for causation-related discovery. The Court concludes these circumstances portend nothing of consequence, holding a political question exists based solely on the contractor's allegations. This approach is misguided.

The existence of a political question requires a "discriminating inquiry into the precise facts and posture of the particular case" rather than "resolution by any semantic cataloguing."[12] The Court contravenes this directive by concluding that—despite the evidentiary void and without regard to the lawsuit's procedural posture—a political question is presented whenever a defendant alleges the military contributed to the harm claimed. The Court's analysis to the contrary notwithstanding, the procedural context is significant.

This case was decided on a plea to the jurisdiction, and under our well-settled procedures, naked allegations are not enough to sustain a jurisdictional plea. As we have explained time and again, when the jurisdictional inquiry and merits intertwine, as they do on the causation issue here, dismissal is improper absent proof that jurisdiction is lacking. Because such a plea invokes a

---

[12] *Baker v. Carr*, 369 U.S. 186, 217 (1962).

4

summary-judgment type proceeding, any fact disputes must be resolved by the factfinder.[13]  The trial court does not, as the Court implies, have discretion to ignore the evidence and "dismiss the case early on."[14]  Courts have discretion regarding *when*, not *whether*, the evidence should be considered.[15]

The point is illustrated in many of our sovereign-immunity cases.  For example, a plea to the jurisdiction alleging sovereign immunity may not be granted on the bare assertion that the governmental unit was not grossly negligent and was thus immune from suit under the Tort Claims Act.[16]  If, as here, the plea proceedings go beyond the pleadings, the trial court determines whether the evidence creates a fact issue regarding subject-matter jurisdiction, and if so, the case cannot be dismissed.[17]  Indeed, a governmental entity may not be released from the case until the factfinder has resolved all facts necessary to determine the jurisdictional matter.[18]  Concerning the political question doctrine, if a fact issue about the Army's responsibility exists, the political question doctrine may—depending on inextricability—preclude judicial resolution of the disputed fact.  But in both sovereign-immunity and political-question cases, dismissal is neither warranted nor required unless evidence raising a fact issue is produced in the first instance.

---

[13] *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770-71 (Tex. 2018); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

[14] *Ante* at 20.

[15] *See Miranda*, 133 S.W.3d at 227.

[16] *Cf. id.* at 224-25, 231-32 (evaluating affirmative evidence that the governmental entity was not grossly negligent).

[17] *See Alamo*, 544 S.W.3d at 770; *Miranda*, 133 S.W.3d at 232.

[18] *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015).

The Court handwaves established procedure, saying fealty to our precedent would reduce the political question doctrine "to an irrelevance."[19] But this is little more than unfounded hyperbole. The Court fails to acknowledge that the political-question and sovereign-immunity doctrines involve common concerns, such as the need to avoid judicial second-guessing.[20] Our plea-to-the-jurisdiction procedures have not rendered sovereign immunity a nullity, and the political question doctrine is no more endangered by those procedures. The Court's analysis is conspicuously bereft of a compelling justification to jettison established precedent in favor of a special rule for political-question cases.

And this is not the only defect in the Court's analysis. A more disconcerting error lies in the evidentiary void the Court downplays. Because discovery was prematurely halted, the facts of this case have not been developed. The Court's disposition is contrary to the approach taken by federal appellate courts, which look to the evidence, not the allegations, to determine whether a political question is genuinely in play. In case after case, federal courts have remanded for additional discovery and other proceedings necessary to determine whether a political question is actually—rather than potentially—inextricable from the case.[21]

---

[19] *Ante* at 19.

[20] *Compare Baker v. Carr*, 369 U.S. 186, 217 (1962) (including as political-question factors "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government" and any "need for unquestioning adherence to a political decision already made"), *with Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994) ("The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions.").

[21] *See Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1217 (9th Cir. 2017) ("As the facts develop, it may become apparent that resolving [the] superseding causation defense would require the district court to evaluate the wisdom of the Navy's decisions. . . . But at this point, that is not clear."); *In re KBR, Inc. (Burn Pit Litig.)*, 744 F.3d 326, 339 (4th Cir. 2014) ("[A]lthough the evidence shows that the military exercised some level of oversight over [KBR], we simply need more evidence to determine whether KBR or the military chose how to carry out these tasks. We therefore cannot determine whether the military control factor renders this cause nonjusticiable at this time."); *Lane v. Halliburton*, 529 F.3d 548, 567 (5th Cir. 2008) ("The Plaintiffs' negligence allegations move precariously close to implicating the political question doctrine, and further factual development very well may demonstrate that the claims are barred. However, . . . we cannot say at this point that [the] negligence claims necessarily implicate the

6

This is a sound course of action we would be wise to follow because it fulfills our obligation to take cases that may be decided without encroaching on matters committed to the political branches and accords with our plea-to-the-jurisdiction procedures. But even though Freeman is entitled to jurisdictional discovery before her case is dismissed, the Court says Chapter 33's proportionate-responsibility provisions make evaluation of the military's role inevitable. On this point, the Court is demonstrably incorrect because a factual determination that the military was involved in the chain of causation is not equivalent to finding the military responsible.[22] Even if Chapter 33 inexorably implicates the military's liability, dismissal at this juncture is precipitous because the Army may not remain designated as a responsible third party. Though the trial court must grant a request to designate a responsible third party if the designation is supported by the pleadings and timely requested,[23] Chapter 33 requires the court to strike the designation if, after discovery, the proponent cannot back up its claim with evidence:

> After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court *shall grant* the motion to strike unless a defendant produces sufficient

---

political question doctrine."); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1362 (11th Cir. 2007) ("At this early stage of the litigation, we therefore cannot say it is evident that McMahon's suit will call into question decisions made by the military, must less the kind of military decisions that might be insulated by the political question doctrine."); *see also Harris v. Kellogg, Brown & Root Servs., Inc.*, 724 F.3d 458, 469 (3d Cir. 2013) ("If there is sufficient evidence to support the defense, then the District Court must determine whether the defense actually presents a nonjusticiable issue.").

[22] *See post* at 8-9 (Devine, J., dissenting).

[23] TEX. CIV. PRAC. & REM. CODE § 33.004(a)-(g); *see In re Coppola*, 535 S.W.3d 506, 507-08 (Tex. 2017) (orig. proceeding).

evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.[24]

Chapter 33 thus allows Freeman to extricate the Army from the case and avoid a political-question dismissal if evidence of responsibility is lacking after an adequate time for discovery. Yet Freeman has been denied the benefit of the safeguards the statute provides. The district court granted AMK9's plea to the jurisdiction a mere five days after granting the motion to designate the Army as a responsible third party. Five days is rarely an adequate time for discovery. And more importantly, AMK9 has not produced any evidence that the Army caused or contributed to Freeman's injury. The Court is affording the Army's designation as a responsible third party far more weight than Chapter 33 allows.

The Court does not mention Section 33.004(*l*), merely stating that the trial court has discretion to dismiss cases raising jurisdictional issues early in the proceedings.[25] But Chapter 33 does not allow such discretion; it requires the trial court to strike a responsible-third-party designation if the defendant cannot—with evidence—support the designation. This scenario would, in this case, eliminate the existence of any political question.

Under Chapter 33, a responsible-third-party designation is permitted only on the terms and conditions provided in that statute, and through the process provided in Section 33.004(*l*), the alleged political question may be extricated from this case.[26] As the adage goes, he who lives by the sword today, may die by the sword tomorrow. Thus, rather than summarily dismissing on the

---

[24] TEX. CIV. PRAC. & REM. CODE § 33.004(*l*) (emphasis added).

[25] *Ante* at 20.

[26] *See Lane*, 529 F.3d at 566-67 (refusing to dismiss the lawsuit under Federal Rule of Civil Procedure 12(b)(1) because "we cannot say that all plausible sets of facts that would permit the recovery from KBR would also raise a political question").

8

basis of a political question, the cause should be remanded to the trial court to allow the parties to more fully engage the discovery process as required by Chapter 33, our plea-to-the-jurisdiction precedent, and the inextricability requirement.

**III**

The Supreme Court's most recent political-question guidance serves as a reminder that courts must not shirk their "responsibility to decide cases properly before [them]."[27] In *Zivotofsky v. Clinton*, the Court refused to find a political question precluded the third branch from passing on the constitutionality of certain parts of the Foreign Relations Act.[28] In so holding, the Court emphasized the judicial branch's duty to decide cases, observing that judges "appropriately exercise[]" the authority to determine the constitutionality of statutes on a regular basis.[29] "This is what courts do."[30]

As a concurring opinion in *Zivotofsky* put it, courts may not "decline to resolve a controversy within their traditional competence and proper jurisdiction simply because the question is difficult, the consequences weighty, or the potential real for conflict with the policy preferences of the political branches."[31] After all, deciding such cases "is the role assigned to courts by the Constitution."[32]

---

[27] *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012).

[28] *See id.* at 194-96.

[29] *Id.* at 197.

[30] *Id.* at 201.

[31] *Id.* at 205 (Sotomayor, J., concurring).

[32] *Id.*; *see also* TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

9

Here, the Court abdicates that role in favor of a bright-line rule that unnecessarily and improperly tilts to the advantage of tortfeasors, allowing wrongdoers to evade responsibility by accusing others. Dismissal on "the mere chance that a political question may eventually present itself" is inappropriate[33] and works an injustice on those who risk their lives working alongside military contractors. Because we do not know now, with any certainty, that the potential political question cannot be extricated from this case, dismissal is premature and improper. I respectfully dissent.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** June 29, 2018

---

[33] *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1365 (11th Cir. 2007); *see also Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (before dismissing on political-question grounds, "a court must satisfy itself that [a] political question will certainly and inextricably present itself").