**Affirmed and Memorandum Opinion filed April 7, 2020.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-18-00827-CV

---

**WANDA A. AKOREDE, Appellant**

**V.**

**TEXAS WORKFORCE COMMISSION F/K/A TEXAS DEPARTMENT OF ASSISTIVE REHABILITATION SERVICES, Appellee**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-57837**

---

## MEMORANDUM  OPINION

Wanda Akorede sued the Texas Workforce Commission for retaliation under the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code § 21.055. The trial court granted the Commission's plea to the jurisdiction, and Akorede brings this pro se appeal challenging the dismissal of her case. We affirm.

# I.    Standard of Review and Legal Principles

Governmental units are immune from suit unless the state consents. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).  The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that violates the statute. *Id.*  Immunity from suit may be asserted in a plea to the jurisdiction. *Id.*

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or, as here, both. *See id.*  If a plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating jurisdiction. *Id.*  We construe the pleadings liberally in favor of the plaintiff. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  If a plea challenges the existence of jurisdictional facts, we consider the evidence to resolve the jurisdictional issue. *Alamo Heights*, 544 S.W.3d at 770–71.  For such a plea, the standard of review mirrors that of a traditional summary judgment: if the plaintiff's factual allegations are challenged with evidence, the plaintiff must raise a genuine issue of material fact to overcome the plea. *See id.* at 771.

The TCHRA prohibits employers from engaging in a retaliatory action against an employee for opposing a discriminatory practice. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015).  To establish a violation, the plaintiff must show: "(1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action." *Id.*  These elements are the prima facie case that a plaintiff must plead to establish jurisdiction, and a plaintiff must plead the basic facts that make up the prima facie case. *Alamo Heights*, 544 S.W.3d at 782; *Nicholas*, 461 S.W.3d at 135.

2

## II.    Procedural Background and Evidence

### A.    Allegations in the Petition

In her live pleading, Akorede alleged that she is an African American woman over the age of forty. She began working for the Commission in 2007. Problems arose in 2013 when Akorede's manager transferred additional work to her that made it "almost impossible" for her to complete her work. When the increased workload was removed, the manager's "abusive behavior began to increase in frequency and tenor." The manager violated the Commission's policies and procedures by "denying legitimate leave requests."

In September 2014, Akorede filed an "administrative complaint" against the manager concerning his "offensive and abusive behavior towards her specifically his unwarranted discipline for unapproved leave which was in fact previously approved." The Commission investigated and ultimately disciplined the manager for his conduct.

Shortly after the manager was disciplined, "he began a systematic and persistent crusade to get [Akorede] terminated from her employment." He would review her completed work "to try and find something he could discipline her for." No other employees had their work audited in this manner.

In the year following the complaint, the manager stopped giving her merit pay increases, although Akorede had previously received merit pay increases each year she had been employed. The manager excluded her from some assignments and meetings and would "reverse" her completed work to make it appear that her performance was substandard. The manager initiated disciplinary actions against Akorede, and when Akorede refused to sign a "write up," the manager called police and told her to leave the office. As a result of the manager's conduct,

3

Akorede was "not made eligible for merit bonuses, promotions, and/or salary increases."

In September 2015, Akorede filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging "retaliation based on age, race and gender." Subsequent to the filing of this charge, Akorede's "supervisors and co-workers retaliated against [her] for taking such action."

Akorede alleged that in June 2016 the manager "again began review of Mrs. Akorede's closed cases in search of any discrepancy that he could use as an excuse to issue[] Plaintiff another notice of Possible Disciplinary Action." In July 2016, the manager assigned Akorede "coaching" that suppressed Akorede's performance evaluation scores and kept Akorede in a "disciplinary pattern that would withhold any promotions or monetary increases or bonuses." The manager gave Akorede "false" below average performance evaluations and recommended that she not be given any merit pay increases, which she did not receive.

In April 2017, the manager initiated a "Special Performance Evaluation" for Akorede that was "grossly unfair, contained false statements and was clearly created to harm the Plaintiff's career." When Akorede provided a rebuttal to the manager's supervisor, the supervisor determined that the evaluation was without merit and would not be placed in her personnel file. She continued to work for the Commission when she filed suit.

In the petition, Akorede alleged a claim for retaliation under the TCHRA. She alleged that retaliation occurred as a result of Akorede filing the September 2015 EEOC charge.

## B. *Plea to the Jurisdiction and Evidence*

In its plea to the jurisdiction, the Commission argued that Akorede failed to plead a valid retaliation claim because Akorede did not show that she suffered an adverse employment action or that any alleged adverse action was caused by her filing the EEOC charge. The Commission argued that a causal link was not alleged and could not be inferred from the facts stated due to the length of time between the EEOC charge and the alleged adverse employment actions. The Commission filed Akorede's EEOC charge as evidence, which showed that Akorede had complained about discrimination based on race, color, sex, age, and disability, and retaliation.

In her response to the plea, Akorede alleged that she engaged in protected activity "by filing her written grievance" against the manager in September 2014. Akorede argued that the denial of merit pay increases, the manager's "papering" of Akorede's employment file, and excluding her from assignments amounted to adverse employment actions. Regarding causation, Akorede alleged only that her petition "provides several causal links between the adverse action taken and her EEOC" charge. Akorede did not file any evidence with the response.

The Commission filed a reply and argued that Akorede's September 2014 administrative complaint was not protected activity. The Commission attached the complaint as evidence. Akorede alleged in the complaint that she was filing it against the manager for "harassment, retaliation, creating a hostile work environment, and favoritism." She included a three-page, single-space narrative that focused on events occurring in August and September 2014 concerning the manager's denial of Akorede's leave requests. Akorede did not refer to her age, race, color, sex, or disability, or any discrimination based on those characteristics. Instead, she complained about the manager's "negativity," his "discouraging"

5

management style, and him "not being reasonable at all." She complained that the manager was "rude and unprofessional" and that his failure to approve or deny her requested leave was "simply not fair." She described a meeting she had with the manager when he "rose abruptly from his chair and walked to the door asking [her] to leave that our conversation was over." She felt that this "unprofessional behavior has created a hostile work environment." She elaborated:

> [The manager] is not an easy person to get along with. He does not show empathy and compassion for his staff. He never asks how I feel nor motivates me to do a good job. He never rewards his staff and regularly informs us that "you should be glad you have a job." He is always critical and looks for the negative not the positive in your performance. I feel I am working in a hostile environment that is created by a manager who does not see his staff as human beings but as subordinates.

She believed that the manager was "not cut out to manage an office," and she wanted "someone to care about" her. She explained her request: "I am asking that my leave is approved, that my manager receives training on how to communicate with a diverse staff, how to be a leader, how not to micro-manage staff and how to show empathy to the people you work with."

The Commission also attached a declaration from the director of the Civil Rights Office of the Texas Health and Human Services Commission, to which Akorede had sent her internal complaint. The director testified that Akorede verbally informed the Civil Rights Office that "her concerns were not discriminatory based on a protected class."

After a hearing, the trial court granted the plea and dismissed Akorede's claim.

6

## III. Protected Activity

Akorede contends that she engaged in a protected activity by filing the internal complaint and the EEOC charge. We disagree with Akorede regarding the internal complaint but agree with her regarding the EEOC charge.

An employee may engage in protected activity by filing an internal complaint, opposing a discriminatory practice, or making a charge of discrimination with the EEOC. *Alamo Heights*, 544 S.W.3d at 786. To be protected activity, the employee's complaint must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue. *Id.* Although "magic words" are not required to invoke the TCHRA's anti-retaliation protection, complaining only of "harassment," "hostile environment," "discrimination," or the like, is not enough. *Id.* at 786–87 (holding that internal complaints were not protected activity even though a handful of allegations contained a sexual component because a fact-finder could not reasonably have concluded that the offending conduct constituted sex-based discrimination; the employee "never even hinted that she believed she was targeted because of her gender or any other protected trait").

Nothing in Akorede's internal complaint even hints that she believed she was being discriminated against based on any protected trait, and the Commission adduced uncontradicted evidence that Akorede disclaimed any discrimination based on a protected class. Accordingly, Akorede has not raised a genuine issue of material fact regarding the internal complaint—it was not a protected activity for purposes of the retaliation claim. *See id.* at 786–88.

The Commission does not dispute, on appeal or in its plea, that Akorede's EEOC charge is protected activity. We agree that it is. *See id.* at 786 (noting that

the parties agreed that an EEOC charge was protected activity and concluding that the EEOC charge was protected activity).

## IV. Adverse Employment Action

The THCRA protects employees from actions that are "materially adverse," meaning an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 788 (quotation omitted). This objective requirement is necessary to separate significant from trivial harms. *Id.* "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 788–89 (quotation omitted) (noting that complaints of unfair criticism, exclusion from meetings, or being micromanaged were petty annoyances and not materially adverse actions).

We assume without deciding that Akorede pleaded an adverse employment action based on the disciplinary "coaching" and "papering" of Akorede's personnel file with false negative performance evaluations so as to prevent Akorede from receiving merit pay increases. *See Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 316 (Tex. App.—Austin 1997, writ denied).

## V. Causation

Retaliation claims require proof that the employee would not have suffered the adverse employment action but for engaging in the protected activity. *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate

was the but-for cause of the challenged employment action.").[1]  Alleging a prima facie case regarding causation is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action.  *Alamo Heights*, 544 S.W.3d at 782.  Although temporal proximity may raise an inference of retaliation, the events must be "very close in time."  *Smith v. Harris Cty.*, No. 01-18-00247-CV, 2019 WL 1716418, at *13 (Tex. App.—Houston [1st Dist.] Apr. 18, 2019, no pet.) (mem. op.); *see Barnes v. Tex. A & M Univ. Sys.*, No. 14-13-00646-CV, 2014 WL 4915499, at *5 (Tex. App.—Houston [14th Dist.] Sept. 30, 2014, pet. denied) (mem. op.); *see also Alamo Heights*, 544 S.W.3d at 790 ("Temporal proximity is relevant to causation when it is 'very close.'" (quoting *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007))).

Akorede alleged in her petition that her EEOC charge was made in September 2015, and the next disciplinary action by the manager occurred in June 2016—nine months later.  This adverse employment action is not "very close" in time to the EEOC charge, so the temporal proximity is insufficient to establish a causal link in this case.  *See Alamo Heights*, 544 S.W.3d at 790 (reasoning that an eight-month gap between the EEOC charge and termination recommendation was "so long as to be of little, if any, probative value" (citing *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286–87 (5th Cir. 2015) ("We have found a five month period between the protected activity and the adverse employment action insufficient to establish a causal link."))); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478–79 (5th Cir. 2015) (temporal gap of eight to ten months insufficient to establish causal link); *see also Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (upholding temporal proximity as evidence of causation when the protected

---

[1] We consider federal law concerning Title VII of the Civil Rights Act for guidance in interpreting the TCHRA.  *Nicholas*, 461 S.W.3d at 136–37.

activity and adverse employment action were "separated by weeks, as opposed to months").

Akorede identifies no other facts to support a causal link between her EEOC charge and any subsequent adverse employment actions. Thus, her petition fails to allege a prima facie case for retaliation under the TCHRA.

## VI.    Conclusion

Because Akorede has not stated a claim for retaliation under the TCHRA, sovereign immunity is not waived. The trial court correctly concluded that it lacked subject matter jurisdiction and dismissed the suit.

The trial court's judgment is affirmed.


/s/    Ken Wise
Justice


Panel consists of Justices Wise, Jewell, and Poissant.