# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-24-00030-CV

Appellant, Sandra Greene// Cross-Appellant, City of Austin

v.

Appellee, City of Austin// Cross-Appellee, Sandra Greene

FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-17-003835, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sandra Greene sued the City of Austin under the Texas Commission on Human Rights Act (TCHRA) alleging causes of action for discrimination and harassment based on race, age, and national origin, and for retaliation. *See* Tex. Lab. Code §§ 21.051 (discrimination by employer), .055 (retaliation); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) (recognizing claim for hostile work environment under TCHRA). After the trial court denied the City's plea to the jurisdiction, the case was tried to a jury. The jury failed to find discrimination or harassment against Greene based on race, age, or national origin, but did find that the City took certain employment actions because of Greene's filing EEOC charges of discrimination against the City. The jury also found damages of $300,000 in "back pay," $300,000 in past compensatory damages, and $150,000 in future compensatory damages. The City then filed a motion for judgment notwithstanding the verdict asking the trial court to

disregard the jury's finding of retaliation and the damages findings. The trial court granted the City's motion in part and disregarded the jury's damages findings related to "back pay" and future compensatory damages, finding that those damages awards were not supported by competent evidence. The trial court then rendered judgment awarding Greene $300,000 in damages, $144,888 in attorneys' fees, and conditional appellate attorneys' fees. On appeal, Greene asserts that the trial court erred in disregarding the jury's findings on "back pay" and future compensatory damages and in awarding her less than one third of the attorneys' fees she sought. By cross-appeal, the City asserted that Greene's retaliation claim was barred by sovereign immunity because she failed to establish that she suffered a materially adverse employment action, an element of a retaliation claim under the TCHRA. The City also asserted that the trial court erred in responding to a question the jury asked during its deliberations and challenged the sufficiency of the evidence supporting the trial court's award of $300,000 in past compensatory damages. Because we conclude that Greene failed to establish an element of her retaliation claim, and therefore, the City's sovereign immunity was not waived by the TCHRA, we reverse the trial court's judgment and dismiss Greene's retaliation claim for lack of jurisdiction.

## BACKGROUND

Greene began working for the City in December 1994 and started working at Austin Energy, a public utility that is a department of the City, in March 1997 as an Accountant Technician. In March 2015, Greene, who was by then an Accountant Associate in Austin Energy's Utility Finance Division, applied for a promotion to a position described as "Utility Financial Analyst Senior." Greene and Yvonne Valdiviezo, who was then a Utility Financial

2

Analyst, were the two candidates invited to interview for the position. Valdiviezo was determined through the interview process to be the top candidate and was selected for the position. In May 2015, Austin Energy posted a job opening for the Utility Financial Analyst position previously held by Valdiviezo. Greene and Mary Rona Flores were two of the candidates interviewed for the position, and Flores was selected for the position. In January 2016, Greene appealed the denial of promotion to Austin Energy management through an internal grievance procedure. In her appeal, Greene stated that she was more qualified than Flores but did not make any allegation of discrimination. David Kutach, the manager handling the grievance, denied it. Greene then appealed Kutach's decision to Kutach's supervisor, Mark Dombrowski, who also denied her appeal. In March 2016, Greene used the City's Municipal Civil Service (MCS) process to contest the denial of promotion, again without making any allegations of discrimination.

On May 5, 2016, Greene filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In the May 2016 charge, Greene stated that "[t]he individual that was selected for promotion was a white, Hispanic female, who was less qualified than I in accordance with the requirements for the position" and that "I believe that I have been discriminated against because of my race, black and national origin, African-American in violation of Title VII of the Civil Rights Act of 1964." On June 29, 2016, Greene filed a second charge, again complaining of the failure to promote her to the Utility Financial Analyst position. In the June 2016 charge, Greene stated that she believed that during the interview process two of the interviewers "conspired together to get the Hispanic female in the

3

position of Utility Financial Analyst because of their national origin."[1]    Greene included

additional allegations related to events that occurred in early 2016, stating:

> During the month of January 2016, I filed my denial of promotion with the COA Municipal Civil Service Commission (MCS). My AFSCME Union representative and I met with the next level of Management. The Manager were [sic] going to settle by giving me the title, the salary and the back pay for the position I had been performing and the position I had applied for (Utility Financial Analyst). At some point the Utility Financial Manager filed an integrity complaint with the COA and the GM of Austin Energy. Upon their investigation, they upheld the denial pending the Integrity Claim Investigation.

At trial, Greene testified that the settlement referenced in the June 2016 charge was intended to

resolve her grievance about being denied the promotion in 2015, but it did not happen because

of an integrity complaint filed in March 2016.[2]    Union representative Carol Guthrie also

testified that there had been a "solid agreement" to settle Greene's grievance by giving her the

Utility Financial Analyst title, salary, and backpay, which was "blocked" by the March 2016

integrity complaint. In the June 2016 EEOC charge, Greene added a charge of discrimination

based on "retaliation" and "age" to her previous charge of discrimination based on "race" and

"national origin."

In October 2016, Greene filed another charge of discrimination based on

"retaliation." In this charge, Greene stated:

---

[1]  These two interviewers were Cesar Benavides, the Utility Financial Manager, and Valdiviezo.

[2]  The integrity complaint was initiated by Benavides, who claimed that Kevin Nobles, Benavides's supervisor, had told him that Greene should get the Utility Financial Analyst position. Benavides claimed that after showing Nobles the scores from the interviews, Nobles directed Benavides to "change the scores" so Greene, rather than Flores, would be the highest scoring candidate. Benavides said this directive made him uncomfortable because it conflicted with the City's interview-scoring process and that he refused to change the scores because he "didn't think it would be fair to the other applicants."

4

I received my Success Strategy Performance Review – SSPR – on September 28, 2016 with my Manager. Prior to my meeting with my manager, I asked his manager if my SSPR was a group evaluation or an individual evaluation. He stated that it should be an individual evaluation. The City of Austin's SSPR Policy states that all evaluations are to be given individually, not given/rated as a group. At the beginning of my meeting with my manager, I asked him if my evaluation was an individual rating or a group rating. He stated it was a group rating, the opposite of what his manager and the policy stated. My rating dropped from a 4.5 at mid-year to 4.0 at the end of the year. I asked my manager why the decrease and to justify the reduction in scoring. He replied he didn't have to. He said he thought 4.0 was a good number and I should be happy with that score. Per the City of Austin's HRD Policies and procedures, my manager is required to give me an explanation as to why there was a reduction in my score. Because my manager refused to give me an explanation, I have appealed the rating. Policies and procedures states [sic] that my manager has five days to respond to the appeal. As of this date, he has failed to do so.

I believe my manager's actions and behaviors of continued intimidation, harassment and discipline are forms of retaliation for me filing my original charges of discrimination. I believe this to be a violation of Title VII of the Civil Rights Act of 1964, as amended and the Texas Commission on Human Rights Act, as amended.

At trial, Greene testified that she believed that her manager, Benavides, gave her a "group" rating on her SSPR rather than an individual one in retaliation for her having filed EEOC charges of discrimination. On October 25, twelve days after filing the October 2016 charge, Greene emailed the City's human resources department stating: "I need to file a retaliation claim . . . on Cesar Benavides." The email provided no further details about the retaliation. Greene appealed her SSPR rating to Austin Energy management, who met with Greene about her SSPR appeal and, in November 2016, informed her that although the score would not be changed, Benavides and his supervisors would be retrained on the SSPR process.[3]

---

[3] Greene testified at trial that, as a City employee, her promotions were not based on her SSPR scores. There was no evidence in the record that Greene's mid-year or annual SSPR evaluations had any bearing on her present or future compensation. Greene also testified that in

5

On March 8, 2017, Joya Hayes, the Director of the City's Human Resources Department and Civil Service, sent Greene a memo informing her of a change in her job title and pay grade that had occurred as a result of a citywide classification review of the City's "financial family of job classifications." The memo stated:

> The Chief Financial Officer's Council (CFOC), a team of executive and financial management staff, along with human resources representatives, was formed to review the financial family of job classifications. As a result of this review, some of the job titles and pay grades were changed.
>
> You were asked to complete an Employee Work History Form that reflects your relevant work experience. Your department Human Resources staff and the Compensation Division of the Human Resources Department (HRD) reviewed the forms to determine the appropriate salary range for you in the new salary grade and range for your job title. This is called "zoning."
>
> The zoning process is used to establish a place in the salary range for each individual City employee in a consistent and equitable way. The zones are based on years of experience, after subtracting the minimum qualifications for your position. There are four zones for which an employee qualifies.
>
> For pay adjustments, employees' pay will be at entry of the zone, consistent with procedures for reclassification.
>
> RESULTS
>
> Your new pay grade is 12; however, your pay rate has not changed.
>
> Your new title is Accounting Associate III.

On April 18, 2017, Miranda Arrington, the City's Compensation Consultant, sent a memo to Bryan Dore, the City's Compensation Manager, reporting that Austin Energy was requesting a reclassification of Greene's job "post CFOC Financial Review." Austin Energy

---

all her SSPR evaluations, she never had a rating below "commendable," the second highest rating an employee could receive.

requested that Greene's job be reclassified from Accounting Associate III to Financial Analyst II.

Arrington's memo to Dore stated:

> **Department Request**
>
> [Austin Energy] is requesting a reclassification post Chief Financial Officer Council (CFOC) Financial Review.
>
> **Current Title:  Accounting Associate III (pay grade 12)**
>
> **Proposed Title:  Financial Analyst II (pay grade 17)**
>
> **Recommended Title:  Accounting Associate III (pay grade 12)**
>
> **Department Reason**
>
> [Austin Energy] is requesting an exception to a reclassification for Sandra Greene from an Accountant Associate to a Financial Analyst II.  This reclassification is considered an exception because the incumbent was reclassified by the CFOC within the past year.  The CFOC mapped this position from an Accountant Associate to an Accountant Associate III.  [Austin Energy] asserts that there has been an error in mapping and that the duties and responsibilities map closer to a Financial Analyst II.
>
> **Compensation Analysis** []
>
> With the predominate duties being identified as the accounting of assets, Compensation agrees with the recommendation from the CFOC.  The level of responsibilities of the position match more closely with the Accounting Associate job family rather than the Financial Analyst job family.  Compensation has met with [Austin Energy] and discussed the reclassification process and what has occurred in this particular situation.
>
> **Compensation Recommendation**
>
> Compensation agrees with the CFOC and recommends the position remain as an Accounting Associate III.

Thus, the City Compensation Manager and its Human Resources Director and Assistant Director concurred with the Compensation Consultant's determination to deny Austin Energy's request to reclassify Greene's job from an Accounting Associate III to a Financial Analyst II.

7

Greene filed her fourth EEOC charge in May 2017. In her charge of discrimination based on "retaliation," Greene complained of a number of things that happened in the preceding six-month period that she attributed to retaliation for her having filed three EEOC charges of discrimination. Greene stated that she was excluded from participating in planned "inventory process" in December 2016, which she maintained "created a hostile work environment." Greene also stated that her manager exhibited a "lack of engagement and cooperation when it comes to my success and progress," which she considered a form of retaliation, and that the manager engaged in "unethical behavior, disparate treatment, and unprofessionalism" toward her that "continuously created a hostile work environment." Greene also complained that her most recent SSPR had not been done and that her manager "singled her out" and created a hostile work environment by refusing to communicate with her. Greene included in the grievance her complaint that her October 25, 2016 request to file charges of retaliation against her manager was unresolved.[4] Greene's EEOC charge did not identify the

---

[4] In response to this complaint, Austin Energy's human resources department conducted an investigation and issued a report in September 2018. The report noted that it had been delayed due to Benavides's being on leave of absence from May 2017 until September 2017 and due to the workload and extended absences of the investigators. The report found, among other things, that the dynamics in Greene's workgroup changed after Greene filed her appeal of the denial of her promotion in January 2016, and that, although the changes and tense work environment did not rise to the level of a violation of City policies against retaliation, management had an obligation to address the issues. The report further found that although management had been working on a potential action plan to help correct the situation, it failed to effectively communicate the plan with the members of Greene's work group. The report concluded that Austin Energy management and human resources department could have done a better job communicating with all parties involved and the failure to do so "led to tension and employees feeling uncomfortable in the workplace." With respect to Greene's SSPR, the report concluded that Benavides had "a responsibility to perform his job duties at a level of cooperation that appeared to be lacking due to his failure to complete Ms. Greene's SSPR and providing misleading information" to his supervisor about his failure to do so.

denial of Austin Energy's request to reclassify her job from Accountant Associate III to Financial Analyst II as an instance of retaliation for her filing EEOC charges.

In June 2017, Greene was an Accounting Associate III with an hourly pay rate of $26.11. On June 21, 2017, Austin Energy supervisor Kutach sent a memo to his supervisor Dombroski addressing Austin Energy's request that Greene's job be reclassified from an Accounting Associate III to a Financial Analyst II.[5] Kutach's memo stated:

> The City of Austin's Human Resources Department (HRD) completed a desk audit for Sandra Greene on 07, April 2017. This desk audit was performed in conjunction with the recommendations of the Chief Financial Officers Committee (CFOC) and as a result of her 2016 year-end performance evaluation. The findings of the desk audit and the recommendation from HRD is to reclassify Greene from an Accounting Associate III to a Financial Analyst II.
>
> Austin Energy is transferring Greene from the Fixed Assets Accounting business unit to the Finance Systems Support and Inventory Accounting business unit. This transfer will better align Greene's knowledge, skills, and abilities with her assigned business unit and will complete the Finance Systems team as there is a current vacancy in that business unit. []
>
> Austin Energy Human Resources (AE-HR) conducted a zoning analysis and determined Greene is in Zone IV based on her years of experience. The pay range for Zone IV is $33.43 to $35.09. Placing Greene at the entry of Zone IV ($33.43) would place her compensation above the Financial Analysts I and the Financial Analyst III.

On June 28, 2017, Greene was reclassified from an Accounting Associate III, with an hourly pay rate of $26.11, to a Financial Analyst II, with an hourly pay rate of $33.43. This reclassification was made retroactive to April 30, 2017. Thus, in June 2017, Greene received a

---

[5]    As a result of the Chief Financial Officers Committee's restructuring of City accounting job classifications that Joya Hayes referred to in her March 8, 2017 memo, there were no longer separate job classifications for utility accounting positions at Austin Energy. So, in June 2017, there was no longer a job classification for "*Utility* Financial Analyst" as there had been in June 2015 when Greene applied for that promotion. Instead, the accounting job classification was "Financial Analyst." The record indicates that Austin Energy had positions for Financial Analyst I, II, and III.

9

job reclassification that resulted in a 28% increase in her base pay retroactive to April 30, 2017, the approximate date that the City's Compensation Manger and Human Resources Director and Assistant Director of Human Resources had originally denied Austin Energy's request for this reclassification. In August 2017, Greene was also transferred to the Finance Systems Support and Inventory Accounting business unit.

Greene testified at trial about the transfer from the Fixed Assets Accounting business unit to the Finance Systems Support and Inventory Accounting business unit. Greene testified that she was no longer working directly with Valdiviezo, Benavides, or Flores. Greene testified that she "flourished," "it was great," and that she "loved the job." Greene stated: "I loved the job, I loved the work, I loved my manager, I loved the people; it was great." Greene testified:

> I mean, there were a few bumps, but I had—you know, [my new supervisor] was there to kind of smooth things out and if action needed to be taken, you know, it was taken. But for the most part, the transition was really good and it was really good for me. I was really happy and I was really, really happy with the work I was doing, the level of work I was doing. It was just great.

Also in August 2017, Greene sued the City alleging unlawful discrimination and retaliation under Chapter 21 of the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code §§ 21.001-.556. The City moved for summary judgment on Greene's retaliation claim, arguing that the matters she complained of did not constitute materially adverse employment actions and, for this reason, the City's sovereign immunity was not waived and the trial court lacked subject-matter jurisdiction. The trial court denied the City's motion for summary judgment. The case was tried to a jury in February 2023. After Greene rested, the City moved for a directed verdict on Greene's retaliation claim, asserting that the evidence was factually and

legally insufficient to support it. The trial court denied the motion for directed verdict. The City moved for directed verdict again at the close of all the evidence on the same ground, which motion was also denied. During the charge conference, the City reurged its argument that the allegedly retaliatory actions did not rise to the level of materially adverse actions under the applicable standards. The trial court submitted the case to the jury.

After deliberations, the jury returned its verdict. The jury answered "No" to Question 1 of the charge, which asked whether race, national origin, or age was a motivating factor in the City's decision not to promote Greene to the position she interviewed for at Austin Energy in August 2015. The jury answered "No" to Question 2 of the charge, which asked whether Greene was subjected to harassment based on race, national origin, or age. Question 3 of the charge asked whether 14 separate "employment actions" of the City were taken "because of Sandra Greene's filing EEOC charges of discrimination." The jury answered "Yes" to twelve of the fourteen "employment actions." Question 4 of the charge related to Greene's damages. The jury found $300,000 in "back pay," $300,000 in past compensatory damages, and $150,000 in future compensatory damages. After trial, the City moved for judgment notwithstanding the verdict and moved for the court to disregard some jury findings, specifically asserting that the evidence supporting the retaliation findings was insufficient. After a hearing and briefing by the parties, the trial court granted the City's motion in part and disregarded the jury's findings as to "back pay" and future compensatory damages. The trial court denied the City's subsequent motion to disregard the jury's findings on past compensatory damages and its alternative motion for new trial or remittitur. The trial court rendered a final judgment awarding Greene the $300,000 the jury found as past compensatory damages, along with post-judgment interest. The

11

court also awarded Greene $144,888 in attorneys' fees for prosecuting her claim through trial and post-trial motions, along with conditional appellate attorneys' fees.

Greene then perfected an appeal, in which she asserts that (1) the trial court erred in disregarding the jury's findings on "back pay" and future compensatory damages and (2) the trial court erred by awarding Greene less than one-third of the approximately $450,000 in attorneys' fees she requested. The City perfected a cross-appeal in which it asserted that none of the "employment actions" found by the jury met the legal standard for a materially adverse employment action under the TCHRA, and consequently, the City's immunity was not waived. The City also asserted that (1) the trial court erred in instructing the jury to answer a section of Question 3 that it argues presented an invalid theory of retaliation and (2) the evidence supporting the jury's finding on past compensatory damages was legally insufficient.

**DISCUSSION**

Because it is dispositive, we first address the City's assertion that it retained its sovereign immunity because Greene did not demonstrate that she experienced a materially adverse employment action as a result of her filing an EEOC charge, an element of her retaliation claim under the TCHRA. Governmental units, including municipalities, are immune from suit unless the state consents. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The legislature has waived immunity for claims properly brought under the TCHRA. *Garcia*, 372 S.W.3d at 636. But the waiver extends only "to those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Id.* (citing *State v. Lueck*, 290 S.W.3d 876, 881-82 (Tex. 2009)). Accordingly, a plaintiff must

12

state a claim for conduct that would violate the TCHRA.  *See id.* at 636-37.  Otherwise, "any superficial reference to the [TCHRA] in a pleading would be sufficient to establish the State's consent to be sued—and additionally, the trial court's jurisdiction over the claim—a result the Legislature did not intend."  *Id.* at 637 (citing *Lueck*, 290 S.W.3d at 882).

To establish a trial court's jurisdiction over her TCHRA claim, a plaintiff must "plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation."  *Id.*  Once a case has been fully tried on the merits, however, the prima facie case is no longer relevant.  *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United State Supreme Court.  But when a discrimination case has been fully tried on its merits, . . . a reviewing court does not engage in a burden-shifting analysis." (internal citations omitted)).  Instead, we simply "inquire whether the evidence is legally sufficient to support the jury's ultimate finding."  *Id.*

"Like a failure of proof at the prima facie stage, a failure to prove the elements of a TCHRA claim after a trial on the merits deprives the trial court of jurisdiction." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015) (citing *University of Hous. v. Barth*, 403 S.W.3d 851, 853 (Tex. 2013) (per curiam) (holding that plaintiff's failure to satisfy objective component of good-faith test for reporting violation deprived trial court of jurisdiction)); *see also In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010) (recognizing "when elements of a statutory claim involve 'the jurisdictional inquiry of sovereign immunity from suit,' those elements can be relevant to both jurisdiction and liability" (quoting *Lueck*, 290 S.W.3d at 883)). "A plaintiff's failure of proof at the prima facie stage (as in *Garcia*), post-verdict (as in

13

*Nicholas*), or anywhere in between produces the same result: no immunity waiver and no jurisdiction." *Clark*, 544 S.W.3d at 785.

The elements of a retaliation claim under the TCHRA are jurisdictional in nature. *Garcia*, 372 S.W.3d at 636. The Texas Supreme Court has consistently held that jurisdictional arguments concerning immunity waiver cannot be waived. *See Lueck*, 290 S.W.3d at 881 (holding elements of a Whistleblower Act claim are jurisdictional and may not be waived); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) (holding jurisdiction "may be raised for the first time on appeal" and may not be waived by the parties). It follows that "an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all." *Dallas Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (even "if immunity is first asserted on interlocutory appeal, [the interlocutory-appeal statute] does not preclude the appellate court from having to consider the issue at the outset in order to determine whether it has jurisdiction to address the merits").

Because the TCHRA was enacted in part to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," we look to relevant federal law for guidance when the relevant provisions of Title VII are analogous. *See* Tex. Lab. Code § 21.001(1); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). The TCHRA prohibits employers from engaging in retaliatory action against an employee for opposing a discriminatory practice. Tex. Lab. Code §§ 21.051, .055(1). To establish a violation, the employee must show that: (1) she engaged in an activity protected by the TCHRA; (2) an adverse employment action occurred; and (3) there exists a causal link

14

between the protected activity and the adverse action. *Nicholas*, 461 S.W.3d at 137. A retaliation claim focuses on the employers' response to an employee's protected activity, such as making a discrimination complaint. *Clark*, 544 S.W.3d at 763-64. Regarding the second prong, the scope of the retaliation provision is not limited to conduct that constitutes "ultimate employment decisions"; rather, the provision "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006). However, the retaliation provision does not protect an individual from all retaliation, but from actions that a reasonable employee would have found materially adverse. *Id.* at 67-68. "Material" employer actions are those "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the court, and their employers." *Id.* at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). "Normally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* "The TCHRA's prohibition against retaliation does not protect employees from all ostracism, discipline, or even termination following a discrimination complaint." *Clark*, 544 S.W.3d at 764. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. "Rather, a remedy exists only when the evidence establishes that a materially adverse employment action resulted from the employee's protected activities." *Id.* "The objective materiality requirement is necessary 'to separate significant from trivial harms.'" *Id.* This objective standard is applied to a fact-specific inquiry "because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.

15

There is no dispute in this case that Greene engaged in a protected activity by filing four charges of discrimination with the EEOC beginning on May 5, 2016. *See* Tex. Lab. Code § 21.055 (employee engages in protected activity when she "makes or files a charge"). The City asserts, however, that Greene failed to adduce at trial evidence that was legally sufficient to support findings that, as a result of her protected activity, a materially adverse employment action occurred. "When a jurisdictional challenge under TCHRA is raised after a trial on the merits, we must determine whether the evidence is legally sufficient to support the jury's ultimate finding." *Texas Dep't of Transp. v. Flores*, 576 S.W.3d 782, 791 (Tex. App.—El Paso 2019, pet. denied) (citing *Nicholas*, 461 S.W.3d at 136).

The jury charge included the following question:

**Question 3**

Sandra Greene must establish that without out [sic] her filing EEOC charges of discrimination against the City of Austin, the City of Austin's alleged adverse employment actions, listed below, if any, would not have occurred when they did. There may be more than one cause for an employment decision. Sandra Greene need not establish that her filing the EEOC charges of discrimination, if any, was the sole cause of the City of Austin's adverse employment action, if any. []

Did the City of Austin take the following employment actions because of Sandra Greene's filing EEOC charges of discrimination against the City of Austin?

The question was followed by subparts "a" through "m," each of which set forth an "employment action." The jury found that the City engaged in twelve of the fourteen "employment actions" listed in the charge. Greene relies on these fourteen actions as establishing the disputed element of her retaliation claim; i.e., that she suffered a materially adverse employment action as a result of filing the EEOC charges. We are presented, then, with a question that implicates the trial court's jurisdiction over this case. Do any of the fourteen

16

"employment actions" meet the standard for qualifying as a "materially adverse employment action" under the TCHRA? And if so, was any qualifying "materially adverse employment action" taken because Greene filed EEOC charges of discrimination?

As an initial matter, Greene asserts that we need not consider whether the listed employment actions met the standard for qualifying as a "materially adverse employment action" because the City did not object to the absence of any definition of the term "adverse employment action" in the charge, the charge identifies the twelve employment actions "listed below" in the charge as "the City's alleged adverse employment actions," and sufficient evidence supports the jury's findings that the twelve employment actions occurred. In Greene's view, it does not matter whether the employment actions meet the established definition of an "adverse employment action" because:

> [t]he City did not object to the question and how it was framed in terms of asking whether the listed adverse employment actions were undertaken by the City because of Greene's protected activities. In other words, the question started with the premises that Greene had engaged in protected activity and that the City had engaged in adverse employment actions, leaving the questions to be determined by the jury whether a causal link existed between Greene's protected activities and the City's adverse employment actions.

Greene reasons that because there was no objection to the charge, it is too late for the City to argue that the retaliation claim should be measured against the standard of a "materially adverse employment action" under TCHRA and Title VII case law, and this Court is required to assume that the listed employment actions do meet the standard required to establish the second element of a retaliation claim under the TCHRA. We disagree. "Charge error cannot confer jurisdiction where none exists." *Nicholas*, 461 S.W.3d at 139. The correctness or incorrectness of the jury charge ultimately has no bearing on whether the trial court has jurisdiction over Greene's claim.

17

*Id.* "Sovereign immunity can only be waived by statute." *Id.* We therefore consider whether the evidence is legally sufficient to establish that any of the twelve employment actions Greene relies on to meet the second element of her statutory claim constitute a "materially adverse employment action."[6]

> 1. Benavides evaluated Greene's work performance in her annual SSPR as a member of her work group rather than individually in September 2016.

The evidence at trial was that in September 2016, Benavides evaluated Greene's work performance as member of her work group rather than individually. But there was no evidence that doing so was a materially adverse employment action. Greene's September 2016 performance rating was a 4, which was described as "commendable" and one she should be "happy with." Greene testified at trial that a 4 was a "commendable number" and "I was happy with the score." Greene stated that she appealed the 4 rating because Benavides would not explain to her why it was one-half point lower than her mid-year rating of 4.5. Although Greene testified that she wanted a 4.5 rating rather than a 4, she agreed that this score had no effect on her compensation or eligibility for promotions. *See Burlington*, 548 U.S. at 67 (Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm"). She identified no adverse employment consequences related to the September 2016 performance rating, instead testifying that her issue with the situation was that she "didn't get feedback" from Benavides regarding the rating. *See Allen v. Napolitano*, 774 F. Supp. 2d 186,

---

[6] Because Greene insisted that she need not explain why each of the listed employment actions was "materially adverse," she provided no argument in her briefing or in her presentation to this Court addressing how each, or any, of the listed employment actions met the objective standard required by the TCHRA and Title VII case law. And many of the listed employment actions are untethered to any illuminating context. We have, therefore, conducted our own review of the record to identify and analyze each of the twelve listed employment actions in the context provided by the witnesses' testimony and the trial exhibits.

200 (D.C. 2011) (lack of requested clarification or feedback from supervisor was not materially adverse employment action for purpose of Title VII retaliation claim); *Bridgeforth v. Salazar*, 831 F. Supp. 2d 132, 138 (D.C. 2011) (performance rating of "fully successful" rather than "superior" was not adverse action against employee). We conclude that the manner in which Benavides evaluated Greene's performance in her September 2016 SSPR, which resulted in her receiving a performance rating of 4, did not constitute a materially adverse employment action. Giving an employee a performance rating that was "commendable" and that the employee was "very happy with" after the employee made an EEOC charge of discrimination is not an employment action that would dissuade a reasonable employee from making such a complaint. *See, e.g.*, *Mitchell v. Snow*, 326 F. App'x 852, 856 (5th Cir. 2009) (affirming trial court's finding that employee receiving lower performance rating than she expected would not have dissuaded reasonable employee from making discrimination complaint).

Moreover, there was no evidence connecting Benavides's action in giving Greene a performance evaluation as a member of her work group rather than individually to her having filed an EEOC charge. In response to Greene's complaint about the issue, Benavides explained to Kutach that "the practice of having the scores for that particular workgroup bundled together has been in place for the last two SSPR cycles," and was a practice Benavides believed Kutach and Nobles had approved. *See Office of the Attorney General v. Rodriguez*, 605 S.W.3d 183, 197 (Tex. 2020) (reversing Whistleblower Act retaliation judgment for plaintiff where no evidence supported jury's finding of "but for" causation).

> 2. The City of Austin's Human Resources Division referring Greene to Austin Energy's Human Resources Division to process one of her complaints of retaliation against Benavides in October 2016.

19

In her May 2017 EEOC charge, Greene stated:

> Due to my previous charges against [Austin Energy,] I felt compelled to contact the human resources corporate. I made my request via e-mail to human resources consultant employee relations division. HR consultant requested to call me to find out the nature of my complaint. I responded to her by asking if this would be covered through an intake official. She informed me that she had consulted with her manager and they were declining my intake and instead referred me to the [Austin Energy] HR supervisor for processing.

At trial, Greene testified that the City's Human Resources Division did not tell her not to file a complaint but, rather, "contacted [Austin Energy] HR and moved the complaint over to [Austin Energy] HR." It appears from the record that the October 2016 complaint referred to was one in which Greene complained about Benavides's handling of her September 2016 SSPR rating. Greene was not prevented from filing or pursuing her complaint. Rather, the complaint was referred to the human resources department that the City believed to be the proper one for investigating Greene's complaint against her supervisor. On this record, we cannot conclude that this constituted a materially adverse employment action. *See Jaso v. Travis Cnty. Juvenile Bd.*, 6 S.W.3d 324, 332 (Tex. App.—Austin 1999, no pet.) (employment discrimination laws "were not intended to be vehicles for judicial second-guessing of employment decisions nor intended to transform courts into personnel managers"). Greene did not provide any testimony or evidence of how the transfer of her complaint from the City's corporate human resources department to the Austin Energy human resources department constituted retaliation, much less retaliation that produced "an injury or harm." *See Burlington*, 548 U.S. at 67.

> 3. Greene was not included in an inventory process meeting by her managers in December 2016.

20

Although it is not clear from the finding, it appears from the record that this issue is related to Greene's not being able to participate in an offsite fixed-inventory audit. Greene testified that when she arrived at the location designated for the inventory, she was advised that someone "already came, performed the inventory and had left." Greene testified that she was upset by this event because "it was like I was set up to be there and not participate or be a part of it." While this type of conduct, if severe or pervasive enough, might rise to the level of creating a hostile work environment, Greene's exclusion from the inventory process meeting does not constitute a materially adverse employment action. *See Clark*, 544 S.W.3d at 789 (noting that courts have repeatedly held that complaints of workplace issues like being excluded from meetings are "petty annoyances, not conduct likely to deter an employee from making a discrimination complaint"). Moreover, Greene provided no evidence that missing this meeting caused her to suffer any collateral adverse employment actions. Greene was not disciplined for missing the meeting and was not prevented from performing her job duties. Rather, her complaint was that she felt like she had been "set up" by her colleagues to miss the inventory meeting. On this record, we cannot conclude that this event constituted a materially adverse employment action under the TCHRA. *See Metropolitan Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 494 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (factors that support employment action being materially adverse are effect that act had on employee's opportunity for advancement, pay, and core job duties).

> 4. The City investigated Greene from 2016 to 2017 based on complaints her coworkers had made about her without first disclosing to her that she was the subject of the investigation.

As an initial matter, the investigations themselves were not triggered by Greene's filing EEOC charges but were initiated by complaints made by Greene's coworkers. Thus, the evidence contradicts any finding that Greene was investigated because she filed an EEOC charge. Greene testified that she met with City human resources managers, Teena Gray-Hale and Mark Guyot, and gave them a statement without first being informed that she was the subject of a human resources investigation. Greene did not provide any testimony as to how not being informed of her coworkers' complaints before being asked to make a statement to the human resources department had a material adverse impact on her employment. Greene testified that she felt "tricked and lied to" and did not make arrangements to have her union representative attend the meeting with her. Although Greene felt tricked, there was no evidence that a human resources department's investigating into complaints about an employee without first disclosing the complaint to the employee is uncommon or inherently unfair. There was no evidence that Greene's statement, made without knowledge that she was the subject of the investigation, resulted in any adverse employment actions toward her. Instead, Greene testified that the human resources department reviewed her coworkers' complaints and "determined that no further action was required." And despite her coworkers' complaints and the subsequent investigation, Greene received a promotion and significant pay increase in early 2017. On this record, we cannot conclude that the failure to disclose to Greene that she was the subject of an investigation initiated by her coworkers' complaints before conducting the investigation constituted a materially adverse employment action under the TCHRA.

5.  Benavides did not have Greene's mid-year SSPR meeting with her around April 2017.

22

The evidence at trial was that Benavides failed to complete Greene's SSPR when it was due at the end of April 2017 and then, beginning in May 2017, took an extended leave of absence. In Benavides's absence, Greene's SSPR was completed by Benavides's supervisor Nobles. Although Nobles gave Greene an SSPR rating of 3, Greene did not appeal or otherwise complain about this rating. And, as previously noted, an SSPR rating had no bearing on a City employee's compensation or eligibility for promotion, and Greene presented no evidence tending to show that Benavides's failure to complete her SSPR in April negatively impacted her employment. Courts have held that "a chilly relationship with a supervisor would not dissuade a reasonable worker from making a discrimination complaint," *see Gupta v. Qwest Gov't Svc., Inc.*, No. 3:20-CV-3560-L, 2023 WL 2025056, at *13 (N.D. Tex. Feb. 14, 2023), and that supervisors' actions to avoid employees who accuse them of discrimination do not necessarily amount to materially adverse actions, *see Tiner v. Texas Dep't of Transp.*, 294 S.W.3d 390, 397 (Tex. App.—Tyler 2009, no pet) (concluding that supervisor's limiting his conversations with employee did not constitute materially adverse action for purposes of retaliation claim). On this record, we cannot conclude that Benavides's failure to have Greene's mid-year SSPR meeting with her constituted a materially adverse employment action.

> 6. Austin Energy failed to timely investigate Greene's complaint against Benavides in 2016.

This event is also related to the complaint Greene filed against Benavides in October 2016, the investigation into which was not fully completed until September 2018. Greene testified that after making her complaint to the City's corporate human resources department, it was then referred to Tracy Carter at Austin Energy's human resources department and that she did not hear anything about the status of the complaint "for months." Greene provided no evidence as to

how the "failure to timely investigate" the complaint affected her employment in a materially adverse way. Although Greene was apparently dissatisfied with the pace of the investigation, the final report that was completed in September 2018 constitutes a full and thorough investigation of Greene's complaints and addresses the reason for the delay in the investigation, which by then had expanded to encompass other complaints. The stated reasons for the delay were Benavides's taking a leave of absence, changes in personnel in the Austin Energy human resources department, and the workload of the department's personnel. An "untimely" investigation report, without more, is not a materially adverse employment action. *See Iqbal v. University of Tex. Rio Grande Valley*, No. 7:21-CV-00081, 2023 WL 2411575, at *5-6 (S.D. Tex. Mar. 8, 2023) (mishandling by employer of employee's discrimination complaint against his supervisor was "not injurious" and not actionable retaliation under Title VII).

> 7. Filing allegedly false complaints of misconduct against Greene concerning the offsite asset inventory in 2016.

It is unclear from the jury's findings who made the allegedly false complaints of misconduct against Greene or what the nature of the alleged misconduct was. The September 2018 final report of human resources' investigation into Greene's complaints against Benavides does, however, appear to provide some context. The report's findings are that Greene and Flores were scheduled to conduct an offsite inventory at several locations. Flores arrived early and completed the assignment and then notified Greene by text message that the inventory was completed. Greene called Flores and stated her belief that Flores had intentionally excluded Greene from conducting the inventory. This allegedly "aggressive call" was reported to the Austin Energy human resources department by Dombrowski, who had been informed by Benavides that Flores was visibly upset and crying after receiving Greene's call. Greene

24

testified "I believe they were saying I yelled at [Flores], I screamed at her . . . I signed her out of the [offsite] location." Greene did not deny having an "aggressive call" with Flores, and the September 2018 report states that Greene was "upset by what she perceived as an overall lack of communication by Mr. Benavides." The Austin Energy human resources department took no action against Greene and there was no evidence of any other adverse consequences resulting from this incident. Moreover, there was no evidence that anyone reported the call to the human resources department because Greene had previously filed an EEOC charge. Instead, the evidence at trial was that Dombrowski reported the call to human resources because Flores was observed by Benavides to be visibly upset and crying. On this record, we cannot conclude that a report of Greene's alleged misconduct concerning the offsite asset inventory constituted a materially adverse employment action caused by her having filed an EEOC charge.

> 8. Filing false complaints of misconduct against Greene in 2017 related to the team building meeting.

Again, it is unclear from the evidence or the jury's finding who made false complaints of misconduct against Greene related to a team building meeting in 2017. Greene testified that during a work group team building meeting in April 2017, when it was her turn to speak, Valdiviezo and Flores "began to pass notes and totally disregard[ed] her input into the meeting." The September 2018 report again appears to provide context for this event. The report states that "it was reported to Dombrowski that there were concerns with some of the comments and behaviors in the group that were perceived as unprofessional" and that "Greene was named specifically." The report observes that the negative relationship dynamics in the work group were apparent and states that Greene "said she was uncomfortable with going to the event because she feels like an outsider." Flores and Valdiviezo denied excluding Greene at the

25

meeting and no specific action was taken regarding the events of the team building meeting. Without more, we cannot conclude that an unidentified person making complaints about Greene "related to" a "team building meeting" constitutes a materially adverse employment action caused by Greene's having filed an EEOC charge. While it is apparent from the testimony and evidence adduced at trial that Greene and her co-workers in the Fixed Assets Accounting business unit did not get along and that the environment was unwelcoming to Greene, that alone does not amount to a materially adverse employment action. And although the individual incidents found to have occurred by the jury might constitute harassment or a hostile work environment, the jury failed to find that Greene was subjected to harassment based on race, national origin, or age, and Greene did not appeal that issue.[7]

9. Failing to reclassify Greene in 2017 to the proper pay grade.

As set forth above, in early 2017, the City's Chief Financial Officer's Council (CFOC) reviewed the "financial family of job classifications" and the City's Human Resources Department informed Greene in March 2017 that her job was being reclassified to an Accounting Associate III, which had a pay grade of 12, with no increase in Greene's compensation. Austin Energy, however, had requested that Greene's job be reclassified to a Financial Analyst II, which had a pay grade of 17. Presumably this is the employment action the jury charge referred to as the "failure to reclassify Greene in 2017 to the proper pay grade." Reclassifying Greene to a job with a pay grade of 12 in the face of Austin Energy's request that her job be reclassified to one

_____

[7] The jury answered "No" to Question 2 of the charge, which asked whether Greene "was subjected to harassment based on race, national origin, or age." The charge defined harassment as being "subjected to ridicule, insult, or other improper conduct based on Sandra Greene's race, national origin, or age that was unwelcome and undesirable or offensive to Sandra Greene" by a person with authority over employment decisions affecting Greene and that "altered a term, condition, or privilege of employment."

26

with pay grade 17 appears to meet the standard of an adverse employment action, although there was no evidence that the CFOC reclassification determination was linked to Greene's filing EEOC charges. However, in April 2017, Austin Energy again requested that Greene's job be reclassified, "post CFOC Financial Review," from Accounting Associate III to Financial Analyst II. Although this request was initially denied on recommendation of the City's Compensation Consultant, which agreed with the CFOC that Greene's position should remain as an Accounting Associate III, in June 2017 Greene's job was in fact reclassified to Financial Analyst II. Greene's hourly pay rate increased 28% from $26.11 to $33.43 and the reclassification was made retroactive to April 30, 2017. Thus, the original failure to reclassify Greene to "the proper pay grade" was corrected shortly thereafter and the correction was made retroactive. We cannot conclude, on this record, that the reclassification process, as it ultimately played out, constituted a materially adverse employment action. To the contrary, Greene received a substantial raise and was transferred to a business unit where she "flourished" and where she "loved the work," "loved the manager," and "loved the people." Moreover, this increase in Greene's pay grade and compensation occurred one month after Greene filed her fourth EEOC charge in May 2017.

> 10. Benavides's actions that isolated Greene from her co-workers between 2015 and 2017.

As an initial matter, this question improperly included actions by Benavides that occurred before Greene filed her EEOC charge in May 2016 and that are, therefore, immaterial to her retaliation claim. *See Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 51 (Tex. 2021) (affirming dismissal of TCHRA retaliation claim when employee's protected activity took place after the adverse action). Benavides testified that he did not learn of Greene's first EEOC charge until the summer of 2016 and this testimony was not rebutted. Furthermore, in her testimony regarding

27

being "isolated," Greene referred only to the time period after Benavides took a leave of absence in 2017. For example, Greene testified that she "didn't even know who I was supposed to call in to when, you know, I wasn't able to make work because I had no manager. I didn't know what I was supposed to do or who I was supposed to report to." She also testified that she was "excluded" from meetings organized by her new interim supervisor, Christine Martinez, and stated that Martinez would "go the other way" when she saw Greene. Actions that made Greene feel isolated from her coworkers do not meet the objective standard required to constitute materially adverse employment actions. *See Clark*, 544 S.W.3d at 789 (holding that being "ostracized" by one's coworkers does not constitute materially adverse employment action); *see also Tejeda v. Travis Ass'n for the Blind*, No. 1:12-CV-997-DAE, 2014 WL 4165370, at *8 (W.D. Tex. 2014) (warning coworkers to "steer clear" of employee who filed grievance does not constitute materially adverse employment action (citing *Aryain v. Wal-Mart of Tex., L.P.*, 534 F.3d 473, 484-85 (5th Cir. 2008))). And, as previously noted, the jury answered "No" to Question 2 of the charge regarding whether Greene was subjected to harassment based on race, national origin, or age, and Greene has not appealed that issue.

11. Failing to timely evaluate Greene in 2017

Benavides's failure to evaluate in Greene in 2017 has been discussed in number 5 above and, for the same reasons, does not constitute a materially adverse employment action.

12. Failing to timely provide mid-year feedback on Greene's 2016-2017 mid-year SSPR.

28

Greene's dissatisfaction with the feedback provided related to receiving a rating of 4 rather than 4.5 in her 2016 SSPR has been addressed in number 1 above and, for the same reasons, does not constitute a materially adverse employment action.

None of the enumerated employment actions found by the jury constitute a materially adverse employment action required to meet the second element of a retaliation claim. *See Nicholas*, 461 S.W.3d at 137 (establishing violation of TCHRA's prohibition against engaging in retaliatory action against employee for opposing discriminatory practice requires showing that adverse employment action occurred). The record certainly contains evidence that Greene and her direct supervisor and coworkers had strained relationships and that the work environment prior to her transfer to a new department was clearly unpleasant. But the jury expressly rejected Greene's harassment and discrimination claims, and Greene did not appeal those findings. The evidence in the record shows that upper management at Austin Energy, specifically Kutach and Dombrowski, took actions after Greene filed her EEOC charges that markedly improved her circumstances. Less than one year after Greene filed her first EEOC charge, her job had been reclassified to one that was five pay grades higher, she had received a 28% increase in her base pay, and she had been transferred to a business unit with coworkers, a supervisor, and work that she "loved" and where she "flourished." On this record, we cannot conclude that Greene suffered a materially adverse employment action because of her filing EEOC charges. Greene's failure to prove this element of her retaliation claim under the TCHRA deprives the trial court of jurisdiction. *Id.* at 136.[8]

---

[8] Having found that the trial court lacked jurisdiction over Greene's retaliation claim under the TCHRA, we do not address the City's remaining issues or any of Greene's challenges to the damages and attorneys' fee awards.

29

## CONCLUSION

Having concluded that Greene failed to prove an element of her retaliation claim, the City's immunity from suit was not waived, and the trial court lacked jurisdiction over her claim. We therefore reverse the trial court's judgment and render judgment dismissing Greene's retaliation claim.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Reversed and Dismissed

Filed: July 17, 2025